No. 26-50111

# In the United States Court of Appeals for the Fifth Circuit

AMERICAN SUSTAINABLE BUSINESS COUNCIL,
Plaintiff–Appellee,

v.

KELLY HANCOCK, IN HIS OFFICIAL CAPACITY AS ACTING TEXAS COMPTROLLER OF PUBLIC ACCOUNTS;
KEN PAXTON, ATTORNEY GENERAL, STATE OF TEXAS,
Defendants–Appellants.

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## REPLY BRIEF

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

WILLIAM R. PETERSON
Solicitor General
William.Peterson@oag.texas.gov

CAMERON FRASER
Assistant Solicitor General

*Counsel for Defendants–Appellants*

# TABLE OF CONTENTS

Table of Authorities ... ii
Argument in Reply ... 1
I. ASBC Lacks Associational Standing to Challenge the Procurement Provision. ... 2
II. SB13 Does Not Violate the First Amendment. ... 4
A. SB13 applies to non-expressive commercial activity. ... 5
1. The *ejusdem generis* canon supports the State. ... 5
2. The canon of *noscitur a sociis* supports the State. ... 8
3. Constitutional avoidance supports the State. ... 9
4. ASBC's arguments regarding application of SB13 to third parties are misplaced. ... 10
B. The district court failed to acknowledge the admittedly constitutional applications of the law ... 12
C. The district court failed to apply Texas severability principles. ... 15
III. SB13 Is Not Unconstitutionally Vague. ... 16
A. ASBC lacks standing to raise a vagueness challenge. ... 16
B. SB13 is not unconstitutionally vague. ... 19
1. SB13 governs how the State spends its own funds; it does not regulate private parties. ... 19
2. ASBC does not defend the district court's vagueness analysis and does not develop any independent argument. ... 21
IV. The District Court Erred by Entering a Universal Injunction. ... 22
Conclusion and Prayer ... 25
Certificate of Compliance ... 26

# Table of Authorities

**Cases:**

*AbbVie, Inc. v. Murrill*,
180 F.4th 747 (5th Cir. 2026) .... 21
*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
570 U.S. 205 (2013) .... 5, 20
*Ali v. Federal Bureau of Prisons*,
552 U.S. 214 (2008) .... 7
*Alston v. Town of Brookline*,
997 F.3d 23 (1st Cir. 2021) .... 13
*Ark. Times LP v. Waldrip*,
37 F.4th 1386 (8th Cir. 2022) .... *passim*
*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .... 18
*Batiansila v. Advanced Cardiovascular Sys., Inc.*,
952 F.2d 893 (5th Cir. 1992) .... 24
*Blackmon-Malloy v. U.S. Capitol Police Bd.*,
575 F.3d 699 (D.C. Cir. 2009) .... 23-24
*Carr v. Rogers*,
383 S.W.2d 383 (Tex. 1964) .... 8
*Chaney v. Plainfield Healthcare Ctr.*,
612 F.3d 908 (7th Cir. 2010) .... 18
*City of San Antonio v. Realme*,
731 S.W.3d 342 (Tex. 2026) .... 6
*Commodity Futures Trading Comm'n v. Schor*,
478 U.S. 833 (1986) .... 9
*Fischer v. United States*,
603 U.S. 480 (2024) .... 6
*Forsyth County v. Nationalist Movement*,
505 U.S. 123 (1992) .... 11
*Greater Houston P'ship v. Paxton*,
468 S.W.3d 51 (Tex. 2015) .... 9
*Greene v. McElroy*,
360 U.S. 474 (1959) .... 20
*Harrington v. Purdue Pharma L. P.*,
603 U.S. 204 (2024) .... 7

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ........ 18
*In re Millwork*,
631 S.W.3d 706 (Tex. 2021) ........ 6
*Kaswatuka v. U.S. Dep't of Homeland Sec.*,
7 F.4th 327 (5th Cir. 2021) ........ 13, 24
*Kindred Nursing Centers L.P. v. Clark*,
581 U.S. 246 (2017) ........ 18
*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 3
*Magee v. City of S. Padre Island*,
463 F. App'x 377 (5th Cir. 2012) ........ 11
*Marks v. St. Luke's Episcopal Hosp.*,
319 S.W.3d 658 (Tex. 2010) ........ 5-6, 7
*Meese v. Keene*,
481 U.S. 465 (1987) ........ 2, 3
*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ........ 1, 11, 12
*National Endowment for the Arts v. Finley*,
524 U.S. 569 (1998) ........ 19, 21
*Oaks of Mid City Resident Council v. Sebelius*,
723 F.3d 581, 584 (5th Cir. 2013) ........ 24
*Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*,
631 F.2d 953 (D.C. Cir. 1980) ........ 20
*Perry v. Thomas*,
482 U.S. 483 (1987) ........ 18
*Quick v. City of Austin*,
7 S.W.3d 109 (Tex. 1998) ........ 9
*Rose v. Doctors Hospital*,
801 S.W.2d 841 (Tex. 1990) ........ 15-16
*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006) ........ 14
*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ........ 14
*State v. City of McAllen*,
No. 24-1060, 2026 WL 1614384 (Tex. June 5, 2026) ........ 25

*Templeton v. Jarmillo*,
28 F.4th 618 (5th Cir. 2022)........................................................................ 12-13
*Tex. Democratic Party v. Abbott*,
961 F.3d 389 (5th Cir. 2020) ........................................................................... 21
*Trifax Corp. v. District of Columbia*,
314 F.3d 641 (D.C. Cir. 2003) ......................................................................... 20
*Trinseo Europe GmbH v. Kellogg Brown & Root, L.L.C.*,
165 F.4th 399 (5th Cir. 2026) ...........................................................................23
*Trump v. CASA*,
606 U.S. 831 (2025) ........................................................................... 22, 23, 24
*United States v. Buluc*,
930 F.3d 383 (5th Cir. 2019)......................................................................... 7-8
*United States v. O'Brien*,
391 U.S. 367 (1968) ..........................................................................................14
*United States v. Williams*,
504 U.S. 36 (1992) .......................................................................................... 24
*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982) ..........................................................................................21
*VSMSQ Structural Engineers, LLC v. Structural Consultants Associates, Inc.*,
679 S.W.3d 767 (Tex. App.—Houston [1st Dist.] 2023, no pet.)...................... 6
*W. Union Tel. Co. v. State*,
62 Tex. 630 (1884) ............................................................................................16
*Walker v. S. Cent. Bell Tel. Co.*,
904 F.2d 275 (5th Cir. 1990) ........................................................................... 24
*Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*,
537 U.S. 371 (2003) ............................................................................................7
*Women's Med. Ctr. of Nw. Hous. v. Bell*,
248 F.3d 411 (5th Cir. 2001)..............................................................................21
*Woodlands Pride v. Paxton*,
168 F.4th 293 (5th Cir. 2026) ............................................................................15

**Statutes:**

Tex. Gov't Code § 2155.074 ...................................................................... 1, 19
Tex. Gov't Code § 312.013(a)......................................................................15, 16
Tex. Gov't Code § 809.001(1) ............................................................................ 4

**Other Authorities:**

Liz Crampton, *The State Comptroller Needling BlackRock*, Politico (Oct. 12, 2022), https://tinyurl.com/55cdd9xr ........................................................10, 11

## Argument in Reply

ASBC's response brief confirms the narrowness of the issues on appeal. On the merits, ASBC does not deny that the vast majority of SB13 complies with the First Amendment because the refusal to engage in commercial transactions with fossil fuel companies is non-expressive commercial conduct. *Ark. Times LP v. Waldrip*, 37 F.4th 1386 (8th Cir. 2022) (en banc). ASBC bases its First Amendment challenge on SB13's residual clause—"otherwise taking any action that is intended to penalize"—which ASBC incorrectly interprets to extend beyond commercial conduct to speech. *E.g.*, Appellee's Br. 17–18.

As the opening brief details, canons of constitutional avoidance, *ejusdem generis*, and *noscitur a sociis*, refute this interpretation of the statute. Appellants' Br. 24–27; *see also Ark. Times*, 37 F.4th at 1393–94. And because many of SB13's applications are to non-expressive conduct, ASBC failed to satisfy the requirements for a facial challenge under *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). Moreover, any unconstitutional portion of the statute is severable.

With respect to vagueness, constitutional concerns are minimal because SB13 governs how the State will invest and spend its own money as it seeks to achieve the best value for the State. *Cf.* Tex. Gov't Code § 2155.074. ASBC's arguments focus on the phrase "ordinary business purpose," but this is readily understood to concern the economics of a particular investment or contract. The conduct of ASBC's identified members—refusing to invest in fossil fuel companies because they are fossil fuel companies—is not an "ordinary business purpose." This Court should reverse and render partial summary judgment for Defendants.

## I. ASBC Lacks Associational Standing to Challenge the Procurement Provision.

Neither of ASBC's identified members (Etho Capital and Sphere) alleges that it has ever sought or has any present intention to seek a state contract subject to Chapter 2276 (and thus subject to the Procurement Provision of SB13). Appellants' Br. 14–16. Because they are not injured by the Procurement Provision, they lack standing to challenge it.

ASBC suggests that its identified members suffer an Article III injury from "being blacklisted as energy 'boycotters,'" even if the procurement restrictions do not affect them. Appellee's Br. 48. ASBC forfeited this theory by not raising it below. Before the district court, ASBC asserted that its standing to challenge the Procurement Provision was based on injuries to "others not before the court," such as "companies subject to and harmed by the Procurement Provision." ROA.350–51; *see also* ROA.695 (same).

Nor is the theory meritorious. ASBC appears to assert a theory of reputational injury under *Meese v. Keene*, 481 U.S. 465 (1987). But standing to assert such a theory requires more than general allegations of a "chilling effect." *Id.* at 473. To have standing to challenge a label, a plaintiff must "establis[h] that the term . . . threatens to cause him cognizable injury" through evidence such as "detailed affidavits, including one describing the results of an opinion poll and another containing the views of an experienced political analyst." *Id.* (footnote omitted).

And in *Meese*, even though the plaintiff had standing to challenge the label of "propaganda," the theory failed on the merits: "If the term 'political propaganda'

is construed consistently with the neutral definition contained in the text of the statute itself, the constitutional concerns voiced by the District Court completely disappear." *Id.* at 485.

ASBC presented no evidence of reputational harm that Etho Capital or Sphere have suffered or will suffer as a result of the Etho Fund and Sphere Fund being listed on Annex 2 by the Comptroller. Appellants' Br. 7. This is unsurprising: Both companies proudly admit that, to attract values-aligned investors, their funds "boycott" fossil fuel companies under any ordinary meaning of the term. *See* ROA.370–71 (the Etho Fund "screens out fossil fuel companies"); ROA.377 (the Sphere Fund "does not invest in fossil fuel companies"). Etho Capital and Sphere can hardly claim that their reputations are injured by the Comptroller truthfully informing the public that these funds do not invest in fossil fuel companies.

The record citations provided by ASBC to support the proposition that Etho Capital and Sphere "have been harmed by being blacklisted as energy 'boycotters,'" Appellee's Br. 48, establish that these funds have been listed by the Comptroller. *See* ROA.374 ("[T]he Etho Fund has been listed by the Texas State Comptroller."); ROA.381 ("[T]he Sphere Fund has been listed."). Neither affidavit states that the company has suffered reputational harm from this listing, much less provides the detail required by *Meese*.

Article III's requirements represent the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). ASBC lacks associational standing to challenge the Procurement Provision, even under the new theory of standing it asserts on appeal, and this Court should render judgment

vacating the injunction with respect to that provision and dismissing those claims for lack of subject matter jurisdiction.

## II. SB13 Does Not Violate the First Amendment.

On the merits, ASBC's brief confirms the narrowness of its First Amendment challenge. The definition of "boycott energy company" includes five subparts:

1. refusing to deal with [a fossil fuel company],
2. terminating business activities with [a fossil fuel company],

   or otherwise taking any action that is intended to

3. penalize [a fossil fuel company],
4. inflict economic harm on [a fossil fuel company], or
5. limit commercial relations with [a fossil fuel company]

Tex. Gov't Code § 809.001(1) (formatting modified). As the State explained in its opening brief, four of these five subparts concern non-expressive commercial activity not protected by the First Amendment. *See* Appellants' Br. 18–23 (discussing, *inter alia*, *Arkansas Times*, 37 F.4th at 1392).

ASBC's First Amendment arguments concern only one part of the residual clause—"otherwise taking any action that is intended to penalize"—and require interpreting this clause in a manner that expands its scope dramatically beyond the rest of the statute. *See, e.g.*, Appellee's Br. 17–18.

ASBC's viewpoint-discrimination argument, for example, is premised on its interpretation of "otherwise taking any action that is intended to penalize." *See*

Appellee's Br. 20–23. Because ASBC's other arguments depend on its statutory interpretation, the State does not reply to them separately.[1]

ASBC's interpretation of this clause is incorrect. Like the rest of the statute, "any action that is intended to penalize" concerns non-expressive commercial activity. Appellants' Br. 24–27. And even if some applications of this subpart were unconstitutional, the district court failed to compare any unconstitutional applications to SB13's constitutional applications to non-expressive, commercial conduct. Appellants' Br. 27–28. Finally, Texas law presumes severability, and the challenged clause is severable. Appellants' Br. 28–29.

### A. SB13 applies to non-expressive commercial activity.

The interpretive canons of *ejusdem generis*, *noscitur a sociis*, and constitutional avoidance confirm that "any action that is intended to penalize" concerns commercial conduct, *i.e.*, actions that "penalize" a fossil fuel company in the context of a commercial transaction.

#### 1. The *ejusdem generis* canon supports the State.

The *ejusdem generis* canon "warns against expansive interpretations of broad language that immediately follows narrow and specific terms, and counsels us to construe the broad in light of the narrow." *Marks v. St. Luke's Episcopal Hosp.*, 319

---

[1] That said, because SB13 governs only how the State spends its own money, it involves the State as a marketplace participant rather than a regulator. Rather than being reviewed for viewpoint discrimination under general principles of First Amendment law, SB13 would be reviewed as a condition of a government program under the principles of *Agency for International Development v. Alliance for Open Society International, Inc.*, 570 U.S. 205 (2013). *See* Appellants' Br. 19–23.

S.W.3d 658, 663 (Tex. 2010) (plurality op.). SB13's use of the word "otherwise" in the boycott definition's residual clause is a strong indication that the canon applies. *See, e.g.*, *In re Millwork*, 631 S.W.3d 706, 712 (Tex. 2021) (per curiam) ("Rule 199.3's use of the modifier 'otherwise' invokes the *ejusdem generis* canon of construction[.]"); *VSMSQ Structural Engineers, LLC v. Structural Consultants Associates, Inc.*, 679 S.W.3d 767, 777 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("[U]se of the modifier 'otherwise' before the term 'artistic work' invokes the *ejusdem generis* canon of construction[.]"); *see also Fischer v. United States*, 603 U.S. 480, 487 (2024) ("One way to discern the reach of an 'otherwise' clause is to look for guidance from whatever examples come before it.").

Applying *ejusdem generis*, the broad phrase—"otherwise taking any action that is intended to penalize"—should be interpreted in light of "refusing to deal with" and "terminating business activities with" to also apply to the category of commercial transactions. ASBC's responses are unavailing.

First, ASBC notes that the definition of "any action" is broad. Appellee's Br. 18, 29. This is not an answer to *ejusdem generis*; it is a prerequisite for its application, which applies to limit "broad language." *Marks*, 319 S.W.3d at 663; *see also, e.g.*, *City of San Antonio v. Realme*, 731 S.W.3d 342, 350 (Tex. 2026) ("a catch-all provision"). The breadth of "any action" is *why* the canon applies.

Second, ASBC contends that the "'obvious purpose' of SB13" is "to penalize companies that advocate against reliance on fossil fuels," Appellee's Br. 29, and thus the statute should be interpreted to achieve this purpose. This argument begs the question. In truth, the "obvious purpose" of SB13 is that the State of Texas does not

wish to boycott fossil fuel companies, which it believes are good investments, valuable contracting partners, and a pillar of the State's economy. Appellants' Br. 19–23. As a result, the State has chosen to invest in funds (and contract with companies) that contract with fossil fuel companies. *Id.* The statute's purpose is to ensure that the State spends its money consistent with the Legislature's views and does not engage in boycotts. *Id.*

Third, ASBC argues that "*ejusdem generis* does not apply to disjunctive phrases." Appellee's Br. 30. This assertion is incorrect. *Ejusdem generis* applies most frequently to disjunctive lists.[2] *See, e.g.*, *Marks*, 319 S.W.3d at 662, 664 (applying the canon to "accepted standards of medical care or health care or safety"); *Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 382 (2003) ("execution, levy, attachment, garnishment, or other legal process").

*Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008), does not hold that "*ejusdem generis* does not apply to disjunctive phrases." Appellee's Br. 30. The case holds that the canon applies to "a list of specific items separated by commas and followed by a general or collective term" (such as the "boycott" definition in SB13) and not to a phrase with "one specific and one general category." 552 U.S. at 225. The case supports the State, not ASBC.

The same is true of *United States v. Buluc*, which rejected the application of *ejusdem generis* because of the "distinct structure" of the statute at issue. 930 F.3d

---

[2] A list of alternatives is sometimes preceded by a verb such as "may" or "include" and listed as "a, b, and c." *E.g.*, *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 215–16 (2024).

383, 389 (5th Cir. 2019). "The verbs in Subsection (C)—'connives or conspires, or takes any other action'—are not structured grammatically as a list of specifics followed by a generic catchall." *Id.* at 390. "[T]he subsection disjunctively places one category of verbs ('connives or conspires') alongside a second category ('takes any other action')." *Id.* "'[C]onnives or conspires' is cordoned off from 'takes any other action' by a conspicuous set of commas." *Id.* SB13 does not share this "distinct structure," and *Buluc* merely confirms that the structure of SB13 ("an enumeration of specific terms [followed by] a generic follow-on phrase") represents a paradigmatic example for application of *ejusdem generis*. *Id.* at 389 (internal quotation marks omitted).

ASBC also asserts that even if the canon applies, the relevant category is "actions intended to harm fossil fuel companies." Appellee's Br. 31. This is incorrect. The canon limits the general term to the "same kind and classification as those [examples] specifically enumerated." *Carr v. Rogers*, 383 S.W.2d 383, 387 (Tex. 1964). ASBC does not deny that the enumerated examples—"refusing to deal" and "terminating business activities"—both concern harming fossil fuel companies in commercial transactions. The catchall phrase "otherwise taking any action that is intended to penalize" must be understood to be of the same character: actions to penalize fossil fuel companies in a commercial transaction, such as by charging higher prices.

**2. The canon of *noscitur a sociis* supports the State.**

The canon of *noscitur a sociis* confirms the understanding that "any action that is intended to penalize" refers to commercial transactions. As the State explained in

its opening brief (at 26), the word "penalize" in the residual clause should be interpreted in light of the other examples in the list ("inflict economic harm" and "limit commercial relations"), both of which involve economic transactions with fossil fuel companies. "[T]he meaning of a word or phrase, especially one in a list, should be known by the words immediately surrounding it." *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 61 (Tex. 2015). Like "inflict economic harm" and "limit commercial relations," the word "penalize" must be understood to inflict an economic "penalty" in the context of a commercial transaction with a fossil fuel company.

ASBC argues that *noscitur a sociis* does not apply to "action," Appellee's Br. 32, but does not respond to the State's arguments about "penalize." *See* Appellants' Br. 26 ("This approach to 'penalize' violates the *noscitur a sociis* canon[.]").

### 3. Constitutional avoidance supports the State.

Constitutional avoidance resolves any remaining doubt in favor of the State's understanding of the statute. Appellants' Br. 25. Under Texas law, this Court must, "if possible, interpret the statute in a manner that avoids constitutional infirmity." *Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998).

Relying on federal cases, ASBC argues that a court may not "judicially rewrit[e]" a statute. Appellee's Br. 32–33 (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841 (1986)).

The State is not asking this Court to rewrite SB13. Not only is it "possible" to interpret "otherwise taking any action that is intended to penalize" to apply to non-expressive commercial conduct, as discussed above, it is the most reasonable

interpretation of the language. Like the Eighth Circuit in *Arkansas Times*, this Court should interpret all of SB13, including its residual clause, to relate to commercial activities. 37 F.4th at 1393–94.

**4. ASBC's arguments regarding application of SB13 to third parties are misplaced.**

To support its statutory interpretation, ASBC relies on a press release by the Comptroller and SB13's application to third parties like BlackRock and Credit Suisse. Appellee's Br. 23–25.

ASBC's citation to the press release does not support it. The press release states that the Comptroller's review "focused on the boycott of energy companies." ROA.516. Rather than stating "that SB13 punishes companies that 'engage in anti-oil and gas rhetoric,'" Appellee's Br. 23, the press release states the opposite: Some companies engaging in this rhetoric did not, in fact, boycott fossil fuel companies. *See* ROA.516 (describing "doublespeak by some financial institutions as they engage in anti-oil and gas rhetoric publicly yet present a much different story behind closed doors"). Firms engage in "doublespeak" when, behind closed doors, they actually deal fairly with oil and gas companies.

An article quoted by ASBC similarly supports the Comptroller. *See* Appellee's Br. 23 (describing the Comptroller as "explaining that 'some companies that . . . [are] investing in oil and gas' were nonetheless blacklisted because 'their publications . . . make it seem as though they are [boycotting fossil fuels]'" (quoting ROA.354 (quoting Liz Crampton, *The State Comptroller Needling BlackRock*, Politico (Oct. 12, 2022), https://tinyurl.com/55cdd9xr))). The article quotes the

Comptroller as stating the opposite: Companies that only engage in anti-oil and gas rhetoric "would not be on our list." Crampton, *The State Comptroller Needling BlackRock* ("[T]here are some companies that would not be on our list that are not boycotting oil and gas, but if you look at a lot of their publications they make it seem as though they are.").

As to the application of SB13 to third parties, ASBC's decision to bring a facial challenge to the statute "comes at a cost." *Moody*, 603 U.S. at 723. To the extent that SB13 has been misapplied to BlackRock (or any other company), that company remains free to bring an as-applied challenge, but ASBC cannot transform its facial challenge into an as-applied challenge against a third party.[3]

ASBC argues that this Court can consider "authoritative constructions of the [challenged statute], including [the government's] own implementation and interpretation of it." Appellee's Br. 44–45 (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992)).[4] But *Forsyth County* looked to how the County "made clear how it interprets and implements the ordinance" "[i]n the present litigation." 505 U.S. at 131. In this litigation, the Comptroller has repeatedly made clear that he construes SB13's definition of "boycott" to cover only non-expressive commercial conduct. *See, e.g.*, ROA.670–72; Appellants' Br. 17–27.

[3] ASBC is also wrong on the merits. The Comptroller is free to consider a company's public statements as *evidence* that the company is engaging in prohibited discrimination in commercial transactions. ROA.617.

[4] ASBC also relies (at 45) on *Magee v. City of S. Padre Island*, 463 F. App'x 377, 381 (5th Cir. 2012) (per curiam), which concerned "a facial vagueness challenge."

* * *

This appeal ultimately presents a straightforward question of statutory interpretation in which the applicable interpretive canons all point in the same direction. Applying *ejusdem generis*, *noscitur a sociis*, and constitutional avoidance, this Court should reach the same conclusion as the Eighth Circuit in *Arkansas Times* and hold that the statute at issue concerns only non-expressive commercial conduct and does not violate the First Amendment.

### B. The district court failed to acknowledge the admittedly constitutional applications of the law.

Moreover, even if ASBC's interpretation were correct and some applications of "any action that is intended to penalize" might violate the First Amendment, the district court erred in analyzing ASBC's facial challenge. ASBC does not deny that the First Amendment permits application of SB13 to non-expressive commercial conduct, such as "refusing to deal with" and "terminating business activities with" fossil fuel companies. Appellants' Br. 18–23. Particularly in light of ASBC's failure to deny that the mine-run of SB13's applications are permitted by the First Amendment, the district court erred by failing to "determine [the] law's full set of applications, evaluate which are constitutional and which are not, and compare the one to the other." *Moody*, 603 U.S. at 718, 723–24.

ASBC first contends that the State forfeited *Moody*. Appellee's Br. 26 ("Defendants did not cite [*Moody*] in describing the standard for evaluating overbreadth in their papers."). But a party cannot forfeit a case: "A new precedent is not a new argument; it is new support for an existing argument." *Templeton v.*

*Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) ("Citing and analyzing the best discovered authority on the issue supports the presentation, but it is not the same thing as identifying the issue."); *see also Alston v. Town of Brookline*, 997 F.3d 23, 44 (1st Cir. 2021) ("Whether or not an issue is preserved in the trial court does not depend on what authorities the arguing party cites to that court."). The State raised the strict standard for facial First Amendment challenges below, ROA.673, and the district court passed on the issue, ROA.729. Preservation requires nothing more. Moreover, the State is "urging that the grounds given by the district court . . . are wrong." *Kaswatuka v. U.S. Dep't of Homeland Sec.*, 7 F.4th 327, 329 (5th Cir. 2021) (internal quotation marks omitted).

When addressing whether it satisfied the facial-challenge standard, ASBC's brief focuses exclusively on SB13's purportedly unconstitutional applications. Appellee's Br. 27. But even under ASBC's interpretation of "any action that is intended to penalize," any proper analysis of a facial challenge must begin by acknowledging that SB13 is applied constitutionally to commercial conduct, at least including "refusing to deal with" and "terminating business activities with" fossil fuel companies.

ASBC's suggestion that the exception for "ordinary business purpose" means that SB13 applies only to expression protected by the First Amendment is incorrect. Appellee's Br. 18–19; *see also* Appellee's Br. 40 (asserting that it is "difficult to imagine what sort of conduct is both not an 'ordinary business purpose' and not an expression protected by the First Amendment" (quoting ROA.732–33)). Neither

ASBC nor the district court cite any authority supporting this understanding of the First Amendment, and it is incorrect.

Whether conduct receives First Amendment protection depends on whether the conduct is expressive or non-expressive, not whether the actor's motivation is ideological or fiscal. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) ("[W]e have extended First Amendment protection only to conduct that is inherently expressive."); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) ("[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech[.]"). The Supreme Court rejected ASBC's "purpose" approach in *United States v. O'Brien*: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." 391 U.S. 367, 376 (1968). "Purpose" does not extend First Amendment protections to non-expressive conduct.

As the Eighth Circuit correctly held in *Arkansas Times*, "the purchasing decisions at the heart of a boycott" are non-expressive commercial activities unprotected by the First Amendment. 37 F.4th at 1392. The refusal to engage in commercial transactions with fossil fuel companies is non-expressive commercial activity unprotected by the First Amendment, regardless of purpose, and SB13 constitutionally applies to commercial transactions with fossil fuel companies.

ASBC's brief does not weigh these constitutional applications of the majority of SB13 against any unconstitutional applications of the residual clause. Even if ASBC's statutory interpretation were correct, this Court should vacate and remand for the

district court to compare the law's many constitutional applications against any unconstitutional ones. *See Woodlands Pride v. Paxton*, 168 F.4th 293, 307–08 (5th Cir. 2026).

### C. The district court failed to apply Texas severability principles.

Nor does ASBC successfully defend the district court's failure to apply Texas severability principles. ASBC does not deny that Texas law presumes severability and instructs courts that the invalidity of "any provision of a statute or its application to any person or circumstance . . . does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application." Appellants' Br. 29 (quoting Tex. Gov't Code § 312.013(a)).

The remainder of SB13's definition of "boycott" can be given effect without "otherwise taking any action that is intended to penalize." Enjoining only that application would still leave in effect the application of SB13 to "refusing to deal with" fossil fuel companies, "terminating business activities with" fossil fuel companies, and "otherwise taking any action that is intended to . . . inflict economic harm on, or limit commercial relations with" fossil fuel companies. The statute would remain workable and effective.

ASBC argues that "[t]he 'taking any action' clause is a key component of the 'boycott' definition" and that "[s]evering such a key provision . . . would be inappropriate." Appellee's Br. 39.

No authority supports ASBC's "key component" theory. The principal case on which ASBC relies, *Rose v. Doctors Hospital*, reiterates the strong presumption of severability: "[I]f, when we strike the statute's application to the common law

claims, we are left with something which 'remains complete in itself, and capable of being executed in accordance with the legislative intent, wholly independent of that which was rejected, it must stand.'" 801 S.W.2d 841, 845 (Tex. 1990) (quoting *W. Union Tel. Co. v. State*, 62 Tex. 630, 634 (1884)). Even enjoining SB13's application to "any action that is intended to penalize," the remainder of the definition of "boycott" remains complete and capable of being executed in accordance with legislative intent. The remaining pieces of the definition "can be given effect without the [allegedly] invalid provision or application." Tex. Gov't Code § 312.013(a).

Even if ASBC were otherwise correct, the district court erred by enjoining enforcement of the entire statute rather than the portion of the residual clause that ASBC contends violates the First Amendment.

## III. SB13 Is Not Unconstitutionally Vague.

The district court also erred by holding that SB13 is unconstitutionally vague.

### A. ASBC lacks standing to raise a vagueness challenge.

ASBC lacks associational standing to challenge SB13 as vague because the conduct of its two identified members falls squarely within "boycott" as defined in SB13. Appellants' Br. 29–31. ASBC does not deny that Etho Capital and Sphere "refus[e] to deal with" fossil fuel companies in their funds. *See* ROA.371 ("[The Etho Fund] screens out fossil fuel companies."); ROA.380 ("Sphere forego[es] investments in fossil fuel companies.").

ASBC argues that because its members offer commercial justifications for discriminating against fossil fuel companies, their refusals are for an "ordinary

business purpose." Appellee's Br. 18–19, 45–46. Etho Capital contends, for example, that "screen[ing] out fossil fuel companies" successfully "identifies better run, more efficient companies that often outperform their competitors." ROA.371. Similarly, Sphere asserts that the Sphere Fund's discrimination against fossil fuel companies "satisf[ies] market demand." ROA.377.

ASBC is incorrect to equate "ordinary business purpose" with a commercial justification. In the context of a nondiscrimination statute, like SB13, a business acts with an "ordinary business purpose" when it applies neutral criteria equally to fossil fuel companies and other companies. A company can analyze a potential investment in a fossil fuel company by applying the same criteria as it does to other potential investments, but refusing to deal with any fossil fuel company *because it is a fossil fuel company* cannot be an ordinary business purpose.

In this case, Etho Capital's and Sphere's funds apply a blanket prohibition to investments in fossil fuel companies. No matter how profitable, safe, or otherwise desirable any particular investment would be, neither fund will ever invest in any fossil fuel company. Appellants' Br. 6. This is not an ordinary business purpose—Etho Capital and Sphere admittedly refuse to invest in fossil fuel companies solely because they are fossil fuel companies.[5]

---

[5] Consider employment discrimination laws. An employer may decline to hire an applicant from a particular racial group because the applicant does not meet the employer's qualifications. But an employer may not refuse to accept applications from members of a racial group because the employer believes that all members of that racial group are unqualified. And it is well-established that customer preferences are not a defense to discrimination: an employer may not "cater to the perceived

Courts apply a similar principle under the Federal Arbitration Act, in which a court "may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing Centers L.P. v. Clark*, 581 U.S. 246, 251 (2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–40 (2011)). For example, although unconscionability is a generally applicable contract defense, a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). In the same way that generally applicable contract laws cannot derive their meaning from the fact that an agreement to arbitrate is at issue, an "ordinary business purpose" cannot derive its meaning from the fact that a fossil fuel company is at issue.

In this case, Etho Capital and Sphere refuse to invest in fossil fuel companies solely because they are fossil fuel companies, not based on any analysis of the particular investment opportunity at issue. If this conduct did not constitute a "boycott" within the meaning of SB13, it is difficult to imagine what would.

Even if there were some ambiguity in the outer bounds of "boycott" under SB13, because the conduct of Etho Capital and Sphere is squarely within its core, ASBC lacks associational standing to challenge the statute as vague. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010).

---

racial preferences of its customers" in hiring. *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010).

### B. SB13 is not unconstitutionally vague.

ASBC's vagueness arguments also fail on their merits.

#### 1. SB13 governs how the State spends its own funds; it does not regulate private parties.

As the State detailed in its opening brief, ASBC's vagueness arguments are misplaced because SB13 regulates only how the State will spend its money, consistent with the overall responsibility of providing the best value for the State. Appellants' Br. 31–34. *Cf.* Tex. Gov't Code § 2155.074 (noting the need to provide the best value to the State, including "potential tax revenue and employment"). The statute concerns the State as a marketplace participant rather than a regulator, and there is no punishment—civil or criminal—for boycotting fossil fuel companies. The State simply chooses not to spend its own funds in participating in a boycott detrimental to its economy and potential tax revenue.

ASBC attempts to distinguish these principles on the ground that "SB13 implicates and potentially chills constitutionally protected speech." Appellee's Br. 43. As discussed above, ASBC misinterprets the statute, which applies only to non-expressive commercial conduct. *See supra* pp. 5–12. More significantly, this is no answer to the cases cited by the State. *National Endowment for the Arts v. Finley*, for example, involved the creation of artwork protected by the First Amendment, but the Supreme Court nonetheless rejected application of the void-for-vagueness doctrine because "when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." 524 U.S. 569, 589 (1998).

ASBC says that listed companies are "publicly branded" but identifies no legal significance of this assertion. Appellee's Br. 43. Etho Capital and Sphere do not identify any evidence of any harm that they have suffered from "brand[ing]." To the contrary, they proudly represent to the public and investors that their funds boycott fossil fuel companies under any ordinary meaning of the term. *See supra* pp. 16–18 (noting the lack of injury from the procurement provision).

ASBC cites *Trifax Corp. v. District of Columbia*, 314 F.3d 641 (D.C. Cir. 2003), for the proposition that there is a protected liberty interest in government contract bidding. Appellee's Br. 43–44. The case holds that there is a protected liberty interest in the right to "follow a chosen profession free from unreasonable governmental interference," 314 F.3d at 643 (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)), so a government contractor may have a due process claim when it is "effectively put . . . out of business," *id.* at 644 (quoting *Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 963 (D.C. Cir. 1980)). ASBC has neither asserted a due process claim nor presented evidence that Etho Capital or Sphere has been deprived of its right to "follow [its] chosen profession."

Acknowledging that SB13 "does not establish a penalty scheme," ASBC argues that the statute nonetheless "exposes companies to significant contract damages." Appellee's Br. 44. This argument proves the State's point. A company is exposed to potential contract damages only if it voluntarily enters into a contract with the government. If a company dislikes the terms on which the State of Texas offers to transact, then "its recourse is to decline the [transaction]." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). Neither ASBC nor the State

has identified any case holding that vagueness in a government contract violates the Constitution, which would be inconsistent with *NEA v. Finley*, 524 U.S. at 589.

#### 2. ASBC does not defend the district court's vagueness analysis and does not develop any independent argument.

Even if void for vagueness were theoretically applicable to a statute concerning the State's expenditure of its own funds based on the best value for the State, the State's opening brief explained the errors in the district court's analysis. *See* Appellants' Br. 35 ("The district court's vagueness analysis truly reflects concerns about breadth, not vagueness.").

ASBC's brief does not cite a standard for when a statute is unconstitutionally vague or apply this standard to SB13. *See* Appellee's Br. 45–47 (asserting that SB13 "provides no meaningful standards").

There is an "especially high" vagueness standard for civil statutes: "[T]he statute must be so vague and indefinite as really to be no rule at all." *AbbVie, Inc. v. Murrill*, 180 F.4th 747, 766 (5th Cir. 2026) (quoting *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 409 (5th Cir. 2020)). *Village of Hoffman Estates* does not apply because SB13 is not "a quasi-criminal or a criminal law." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 500 (1982); *see also Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 422 (5th Cir. 2001) (involving a statute that "can be characterized as quasi-criminal"). SB13 provides a detailed definition for "boycott" and cannot be described as "no rule at all."

ASBC's vagueness arguments are largely premised on its interpretation of "otherwise taking any action that is intended to penalize." Appellee's Br. 47

(arguing that SB13 "provides no objective criteria for determining when a company's statements regarding the fossil fuel industry are sufficiently skeptical to trigger blacklisting"). Correctly interpreting that provision, as detailed above, cures any purported vagueness. *See supra* pp. 19–21.

And as detailed above, "ordinary business purpose" is readily understandable in context. Refusing to invest in fossil fuel companies *because they are fossil fuel companies* is not an "ordinary business purpose," even if Etho Capital and Sphere assert commercial justifications. *See supra* pp. 13–18. ASBC does not deny that if these companies' funds were offered an incredibly lucrative opportunity to invest in a fossil fuel company—a risk-free opportunity for a 10,000 percent return overnight, for example—they would still refuse to invest solely because the investment would be in a fossil fuel company.

* * *

ASBC's vagueness arguments, which are largely premised on its interpretation of "any action that is intended to penalize," fail on the merits, even if ASBC has standing to raise them.

## IV. The District Court Erred by Entering a Universal Injunction.

The district court entered a universal injunction, ROA.733–34, which the Supreme Court held "falls outside the bounds of a federal court's equitable authority under the Judiciary Act," *Trump v. CASA*, 606 U.S. 831, 847 (2025). To defend this injunction, ASBC relies on forfeiture. Appellee's Br. 48–50.

ASBC is incorrect. First, the key authority foreclosing the universal injunction—*Trump v. CASA, Inc.*, 606 U.S. 831 (June 27, 2025)—issued after the

completion of briefing on ASBC's motion for partial summary judgment. *See* ROA.9 (ASBC's reply filed April 4, 2025). ASBC cites no case requiring the State to have "sought reconsideration based on *CASA* after the district court ruled." Appellee's Br. 49.

Second, more significantly, ASBC never raised any argument to the district court about the proper scope of an injunction. Neither ASBC's motion for partial summary judgment, ROA.338–62, nor its reply in support of the motion, ROA.685–711, develops an argument about the proper scope of an injunction, universal or otherwise. ASBC's motion concludes by asking only that the Court "declare SB 13 unconstitutional and grant summary judgment on Counts One, Two, and Three of Plaintiff's First Amended Complaint." ROA.362.[6]

ASBC did not raise arguments in favor of a universal injunction (or raise arguments regarding its entitlement to injunctive relief at all) before the district court. A defendant is not required to preemptively rebut requests for relief that a plaintiff has never made, and the State cannot be faulted for not challenging ASBC's entitlement to a universal injunction that ASBC never requested. Any forfeiture was ASBC's. *See, e.g.*, *Trinseo Europe GmbH v. Kellogg Brown & Root, L.L.C.*, 165 F.4th 399, 423 (5th Cir. 2026) (discussing a plaintiff's burden to obtain a permanent injunction).

Moreover, this Court can reach issues that were either "pressed or passed upon below." *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir.

[6] ASBC submitted a proposed order containing a universal injunction, ROA.636–37, but did not develop an argument about why this was appropriate relief.

2009) (quoting *United States v. Williams*, 504 U.S. 36, 41 (1992)). As with the district court's analysis of the facial First Amendment challenge, the State is "urging that the grounds given by the district court . . . are wrong." *Kaswatuka*, 7 F.4th at 329 (quoting *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275 (5th Cir. 1990) (per curiam)).

Third, *Trump v. CASA* frames the issue as a limit on courts' power: Universal injunctions "exceed the equitable authority that Congress has granted to federal courts." 606 U.S. at 837. "Congress has granted federal courts no such power [to enter universal injunctions]." *Id.* at 841. The district court's order "falls outside the bounds of a federal court's equitable authority." *Id.* at 847. Such an error—acting outside the bounds of the court's authority—is likely not subject to forfeiture, but even if it were, this Court can address an issue that is "a pure question of law" if "failure to consider it would result in a miscarriage of justice." *Batiansila v. Advanced Cardiovascular Sys., Inc.*, 952 F.2d 893, 896 (5th Cir. 1992). The scope of an injunction is a question of law subject to the "independent judgment of this Court." *Oaks of Mid City Resident Council v. Sebelius*, 723 F.3d 581, 584 (5th Cir. 2013) (citation omitted). And subjecting Texas to an impermissible universal injunction of SB13 would be a miscarriage of justice.

Fourth, ASBC suggests that the scope of the injunction is irrelevant because "if this Court affirms the judgment below on the merits, there will be controlling precedent across the entire [S]tate establishing that the challenged statute is unlawful." Appellee's Br. 50. While true, the practical effect of a decision from this Court is different than a judgment. As the Texas Supreme Court recently explained, "Whatever indirect effect our precedent-setting opinions may have on the behavior

of non-parties, our jurisdiction . . . is to issue judgments that resolve concrete disputes by binding the parties." *State v. City of McAllen*, No. 24-1060, 2026 WL 1614384, at *4 (Tex. June 5, 2026).

The district court erred by entering a universal injunction, particularly where ASBC never argued that it was entitled to one.

## Conclusion and Prayer

The State respectfully renews its request that this Court vacate the partial summary judgment, render judgment dismissing the Procurement Provision claims for lack of jurisdiction, and render judgment on the Divestment Provision claims in favor of the State.

Respectfully submitted.

/s/ William R. Peterson

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

Cameron Fraser
Assistant Solicitor General

*Counsel for Defendants–Appellants*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,500 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ William R. Peterson
William R. Peterson